ROCHE BROS. *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.*
RAYMOND W. GARRIGAN, Defendant-Appellee and Cross-Appellant.

First District (4th Division)    No. 79-1865

Opinion filed August 28, 1980.

108

Hilliard & Hahn, of Chicago, for appellants.

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago (Robert W. Gettleman, H. Debra Levin, and Arthur Don, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, the accounting firm of Roche Bros., Scholz, Garrigan and Walsh, Ltd., a professional corporation, and Edward F. Roche, Robert J. Roche, John A. Scholz, and John T. Walsh, individually, brought suit seeking temporary and permanent injunctions to enjoin the defendant, Raymond W. Garrigan, from interfering with and soliciting business of the corporation for his own accounting practice. The defendant was a vice-president of the plaintiff corporation and also a director and shareholder. The court found injunctive relief was not warranted but made a finding that the defendant had breached his fiduciary duty to the corporation. The plaintiffs appeal from the denial of the injunction. The defendant cross-appeals contending that the court erred in reaching the merits of the breach of fiduciary duty allegations.

A hearing was held on a number of days between May 9, 1978, and April 26, 1979. At the hearing, the defendant, three of the individual plaintiffs, three of the clients and one expert witness testified.

The defendant testified that on April 22, 1978, he informed Robert Roche, one of the individual plaintiffs, of his intention to terminate his relationship with the plaintiff accounting firm on June 1, 1978, and to enter practice with his son. He said he told some of his clients of this decision after notifying the firm. He informed these clients, who had been personally serviced by him while he was with the plaintiffs' firm, that they were free to choose any accountant they wished and that if they wanted to retain him they should ask the firm to release their business records. Three of the clients testified that they told the defendant they wanted to continue to retain him. One said he asked the defendant "to take care of all of our accounting work, as it had been taken care of in the past." Another said he did "not know the [plaintiffs] at all." The third said the defendant "called me and told me that he was leaving. Of course, I said 'where you go, I go!'"

On April 28 and May 2, 1978, the defendant met with the individual plaintiffs to discuss the termination of his association with the firm. At the April 28 meeting he told the plaintiffs of his plans to go into practice with his son and another accountant and told them which clients he had informed of his decision to leave the firm. At the May 2 meeting the plaintiffs distributed a list of the firm's clients and the parties discussed which clients were expected to retain the defendant as their accountant after his termination. The plaintiffs asked the defendant to reconsider his decision.

On May 8, 1978, the day the plaintiffs filed this action, the defendant removed certain clients' files from the plaintiffs' premises. The defendant testified that he did so with the approval of the clients involved. The files consisted of general ledgers, payroll and bank statements which, according to the defendant, were the clients' property. The defendant said he had not resigned as an officer or director of the firm at the time of the trial.

James F. Lee, a former employee of the plaintiff firm, testified that he and the defendant discussed a partnership with each other as early as March of 1978. While discussing termination with the plaintiff, the defendant entered into a lease with Lee, effective May 1, 1978, executed a joint loan agreement with Lee and had Lee working on the accounts of the plaintiff firm's clients.

An expert witness, Arthur Farber, chairman of the committee on professional conduct for the Illinois Certified Public Accountants Society, testified that an accountant who wishes to withdraw from a firm may, under the professional standards, inform the firm's clients of his intention to withdraw and his availability to service the clients. Farber also said he could not testify to the legal duties of a corporate director and that no disciplinary rules were in effect for a certified public accountant who withdrew from a firm.

Edward M. Roche, one of the individual plaintiffs, testified that the defendant's departure from the firm and the business he took with him would have a detrimental effect on the firm's profits. He said one employee had given notice, expressing her intention to go to work for the defendant. At the hearing on September 1, 1978, Roche testified that the firm's billings and receivables had "dropped terribly," and that there had been a certain decline in morale.

John Walsh, another of the individual plaintiffs, testified on January 18, 1979, that with the exception of the defendant's son, no other employee had suffered loss of employment because of the defendant's actions. He also said no company debts or contracts had been impaired because of the defendant's departure and that the firm's credit-worthiness had not been impaired.

On June 7, 1979, the trial court entered an order denying the plaintiffs' motion for a preliminary injunction. The court also found that the defendant had breached its fiduciary duty to the plaintiff corporation. The plaintiffs filed an amended complaint in July of 1979 seeking monetary damages against the defendant on a constructive trust theory.

■■ Preliminarily, the defendant argues the plaintiffs' appeal should be dismissed as moot because the plaintiffs have filed an amended complaint which abandons the prayer for injunctive relief at issue here. The amended complaint did in fact adopt the original complaint, which sought injunctive relief, and we thus see no merit in this argument.

The plaintiffs' argument on appeal is that the trial court erred in failing to issue a preliminary injunction. They contend that the evidence submitted showed fiduciary misconduct, a threat of irreparable harm and no adequate remedy at law.

■■ It has frequently been said that to establish a right to an injunction, the evidence must show (1) that the plaintiff possesses a certain and clearly ascertained right which needs protection; (2) immediate and irreparable injury if the preliminary injunction is denied; (3) lack of an adequate remedy at law; and (4) probability of success on the merits. (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125.) However, other factors are also relevant to the trial court's decision to grant or deny injunctive relief. The trial court must consider the comparative injury the parties will sustain and where the issuance of an injunction will cause great harm to the defendant and will confer little benefit in comparison on the plaintiff, an injunction may be refused. *Biggs v. Health & Hospitals Governing Com.* (1977), 55 Ill. App. 3d 501, 370 N.E.2d 1150.

The plaintiffs seek to enjoin the defendant from interfering with and soliciting business of the plaintiff firm for his own accounting practice. The evidence at the hearing on the injunction showed that the defendant terminated his relationship with the plaintiff firm on June 1, 1978. Some of the plaintiff firms' clients, upon being told of the defendant's new business, chose to continue to utilize his services and transferred their business to the defendant's new accounting firm. Three of the clients testified concerning their decision to continue to retain the defendant as their accountant, and one said he was not acquainted with the defendant's former partners, the individual plaintiffs. One of the plaintiffs testified in January 1979, six months after the defendant's departure, that none of the firm's employees had been terminated because of the defendant's actions and that the plaintiff firms' debts, contracts and credit-worthiness had not been impaired since the defendant's departure.

■■ The appellate court's review of the granting or denial of a preliminary injunction is limited to the determination of whether the trial court abused its discretion. (*Associates for Oral Surgery, Ltd. v. Associates for Oral & Maxillofacial Surgery, Ltd.* (1976), 39 Ill. App. 3d 73, 350 N.E.2d 109.) In light of the testimony summarized above we cannot say that the trial court abused its discretion in refusing to grant injunctive relief.

We believe application of the "balancing test" described in *Biggs* is appropriate here. When the cause is viewed in terms of the harm that would befall the defendant in comparison to the benefit which would be conferred upon the plaintiff if the injunctive relief were granted, we think it clear that the trial court properly exercised its broad discretionary powers in denying an injunction. An injunction which would compel the defendant

to "cease interfering with and soliciting business of the plaintiff firm" would have a significant and detrimental impact upon the defendant's new business. At the same time we cannot see how such equitable relief would confer a significant benefit, or any benefit at all, upon the plaintiffs. The defendant's clients, who previously patronized the plaintiff firm, cannot be ordered to return their business to the plaintiffs and there is no evidence that they would choose to do so even if the defendant were prevented from having any future business relationship with them.

■■ As this court noted in *Hutter v. Lake View Trust & Savings Bank* (1977), 54 Ill. App. 3d 653, 370 N.E.2d 47, a preliminary injunction is an extraordinary remedy and it is generally employed only in matters of great injury and then only with the utmost care and caution. In light of the lack of evidence that the injunction sought here would be of any benefit to the plaintiffs we believe the trial court acted within the scope of its discretion in denying the requested relief.

The defendant's cross-appeal is dismissed. The cross-appeal concerns a finding made by the trial court in its order denying the preliminary injunction. The finding was that the defendant had breached his fiduciary duty to the plaintiff firm. That finding did not constitute an appealable judgment. (See Ill. Rev. Stat. 1979, ch. 110, pars. 301, 306, 307, 308.) At a hearing on a complaint seeking a preliminary injunction the trial court should not decide the merits of the case. (*Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.) The court below heard evidence on the breach of fiduciary duty issue only to determine whether or not it should exercise its discretion in granting a preliminary injunction. At such a hearing all of the evidence on a particular issue need not necessarily be presented. The plaintiffs will have a later opportunity to present all their evidence on the defendant's alleged breach of fiduciary duty if they choose to pursue their legal remedies.

For the foregoing reasons the cross-appeal is dismissed and the judgment of the circuit court is affirmed.

Cross-appeal dismissed.

Judgment affirmed.

LINN, P. J., and JOHNSON, J., concur.